UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| CITIMORTGAGE, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV1242 JCH |
| | ) | |
| PLATINUM HOME MORTGAGE CORPORATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Counterclaim Defendants CitiMortgage, Inc. ("CMI")[1], Citibank, N.A., and Citigroup, Inc.'s (collectively "the Citi Parties") Motion to Dismiss Counterclaim, and Motion to Strike, both filed December 2, 2015. (ECF Nos. 26, 28). The motions are fully briefed and ready for disposition.

## BACKGROUND

At all relevant times, CMI was in the business of, among other things, purchasing, reselling, and servicing residential mortgage loans on the secondary mortgage market. (Complaint ("Compl."), ¶ 1). Defendant Platinum Home Mortgage Corporation ("Platinum") was engaged in the business of originating, sourcing and/or reselling residential mortgage loans. (*Id.*).

According to CMI, at various times the relationship between CMI and Platinum was governed by a contract entitled "Correspondent Agreement Form 200" ("Correspondent Agreement"), dated February 13, 2004, and a "DBA Addendum" dated July 12, 2005, a "Delegated Underwriting Addendum" dated October 14, 2004, and a "CMI Select Addendum"

---

1 CMI alone is the Plaintiff in the underlying Complaint in this matter.

dated October 14, 2004. (Compl., ¶ 16).[2] Section 1 of the Correspondent Agreement provided that, "[f]rom time to time, [Platinum] may sell to CMI and CMI may purchase from [Platinum] one or more residential mortgage, home equity or other loans ("Loan(s)") in accordance with the terms, conditions, requirements, procedures, representations and warranties set forth in the 'CitiMortgage, Inc. Correspondent Manual'…" (Compl., Exh. 1, P. 1). Section 1 further provided that "CMI may purchase Loans with or without conducting a complete review of the Loan documentation. CMI's review of, or failure to review, all or any portion of the Loan documentation shall not affect CMI's rights to demand repurchase of a Loan or any other CMI right or remedy provided by this Agreement." (*Id.*).

Section 2 of the Correspondent Agreement set forth Platinum's representations and warranties. As relevant here, it provided as follows:

> (i) That neither this Agreement nor any statement, report or other information provided or to be provided pursuant to this Agreement (including but not limited to the statements and information contained in the documentation for each Loan purchased by CMI) contains or will contain any misrepresentation or untrue statement of fact or omits or will omit to state a fact necessary to make the information not misleading. The provisions of this sub-section shall not apply to information obtained from (i) appraisers, escrow agents, title companies, closers, credit reporting agencies or any other entity approved by CMI ("Approved Entity") unless [Platinum] knows or has reason to believe that any information provided by such Approved Entity is not true, correct or valid in any material respect and (ii) the Loan applicant(s) unless [Platinum] knows, has reason to believe or, after performing its normal due diligence and quality control review, should have known that any information provided by the Loan applicant(s) is not true, correct or valid in any material respect.

(Compl., Exh. 1, P. 2).

Section 11 of the Correspondent Agreement addressed cure and repurchase, providing in relevant part as follows:

---

[2] According to CMI, true and correct copies of the four documents are attached to its Complaint as Exhibit 1. (Compl., ¶ 21).

If CMI, in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:

    (i)    was underwritten and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan;

    (ii)    was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), [Platinum, Platinum's] directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information relating to said Loan;

    (iii)    was or is capable of being rescinded by the applicable borrower(s) pursuant to the provisions of any applicable federal (including but not limited to the Truth-in-Lending Act) or state law or regulation;

    (iv)    must be repurchased from any secondary market investor (including but not limited to the Fannie Mae, Freddie Mac, FHA, VA, HUD or Government National Mortgage Association) due to a breach by [Platinum] of any representation, warranty or covenant contained in this Agreement or the CMI Manual or a failure by [Platinum] to comply in all material respects with the applicable CMI Manual terms, conditions, requirements and procedures….

[Platinum] will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI. If, after receiving such notice from CMI, [Platinum] is unable to correct or cure such defect within the prescribed time, [Platinum] shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price") or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.

(Compl., Exh. 1, P. 5).

CMI asserts that Platinum sold it at least seven loans "(a) that were underwritten and/or originated based upon [] materially inaccurate information or on material misrepresentations made by the borrower, [Platinum, Platinum's] directors, officers, employees, agents, independent contractors, and/or affiliates; (b) for which CMI has discovered discrepancies regarding property ownership, income representations, or employment representations; (c) for which applicable Fannie Mae, Freddie Mac, FHA, VA, HUD and/or other industry standards or requirements were

not followed; (d) for which the secondary mortgage investor, such as Fannie Mae, Freddie Mac, FHA, VA and/or HUD demanded repurchase of the loan; and/or (e) that have turned out to be otherwise defective or not in compliance with the CMI Manual incorporated into the Agreement." (Compl., ¶ 29). CMI maintains it sent notice of the defects to Platinum, and demanded that Platinum cure the defects or repurchase the loans. (*Id.*, ¶ 30). Despite such alleged notice, CMI alleges Platinum did not cure the defects or repurchase the loans, as required by the parties' agreement. (*Id.*, ¶ 31).

Based on the foregoing, CMI filed its Complaint in this matter on August 13, 2015, asserting one count for breach of contract. (Compl., ¶¶ 34-45). Platinum responded with its Answer, Affirmative Defenses, and Counterclaims on October 9, 2015. As Defendants to its Counterclaims Platinum names CMI, together with Citibank, N.A. and Citigroup, Inc.[3] Platinum maintains that in entering into the Correspondent Agreement with Platinum, the Citi Parties never intended to abide by the covenant of good faith and fair dealing, implied in every Missouri written contract. (Counterclaim, ¶¶ 49, 51). Specifically, Platinum contends the Citi Parties' lack of good faith was evident in their loan repurchase demands because, *inter alia*, (a) the requests were arbitrary and capricious, as the claimed defects were non-existent or based on erroneous facts, and (b) the Citi Parties refused to rescind repurchase demands despite request, even months or years after Platinum refuted the alleged defects. (*Id.*, ¶¶ 58, 59). With respect to the seven loans at issue in CMI's Complaint, Platinum asserts the Citi Parties breached the covenant of good faith and fair dealing by, *inter alia*, conducting flawed and misleading appraisal reviews using guidelines to which the parties never agreed, improperly verifying or calculating borrower income, improperly verifying borrower employment, failing to afford Platinum the contractually mandated period and opportunity to cure or correct the purportedly

---

3 The Citi Parties have not yet filed an answer to Platinum's Counterclaims.

defective loan before demanding repurchase, and claiming loan defects they knew were non-existent or based on erroneous facts. (*Id.*, ¶ 63). Based on these allegations, Platinum asserts counterclaims for breach of the implied covenant of good faith and fair dealing, and fraudulent concealment. (*Id.*, ¶¶ 68-80).

As stated above, the Citi Parties filed a Motion to Dismiss Counterclaim on December 2, 2015, asserting Platinum's claim for fraudulent concealment is both time-barred and fails on the merits, its claim for breach of the implied covenant of good faith and fair dealing fails on the merits, and Platinum has not and cannot plead facts sufficient to support its alter ego theory. (ECF Nos. 26, 27). The Citi Parties further filed a Motion to Strike, asking that the Court strike portions of paragraphs 11, 12, and 14, and paragraphs 15, 23, and 25-40 of Platinum's Counterclaim in their entirety, pursuant to Federal Rule of Civil Procedure 12(f). (ECF Nos. 28, 29).

## DISCUSSION

### I. Motion To Strike

As noted above, the Citi Parties filed a Motion to Strike on December 2, 2015, asking that the Court strike portions of paragraphs 11, 12, and 14, and paragraphs 15, 23, and 25-40 of Platinum's Counterclaim in their entirety, pursuant to Federal Rule of Civil Procedure 12(f). (ECF Nos. 28, 29). Upon careful consideration of the parties' briefs, the Court will grant the Citi Parties' motion. The Court will grant Platinum until **Monday, January 25, 2016**, within which to file an Amended Counterclaim that conforms to this and other rulings set forth in this opinion.

### II. Motion To Dismiss

As noted above, the Citi Parties filed a Motion to Dismiss Counterclaim on December 2, 2015, asserting Platinum's claim for fraudulent concealment is both time-barred and fails on the merits, its claim for breach of the implied covenant of good faith and fair dealing fails on the

merits, and Platinum has not and cannot plead facts sufficient to support its alter ego theory. (ECF Nos. 26, 27).

### A. Standard For Motion To Dismiss

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

### B. Breach Of Implied Covenant Of Good Faith And Fair Dealing

The Citi Parties claim that under Missouri law, a claim for breach of the implied covenant of good faith and fair dealing does not lie when the complained-of action, i.e., the demand for cure or repurchase of defective loans, is expressly permitted by the parties' agreement. (Memorandum in Support of Motion to Dismiss Counterclaim ("Citi Parties' Memo in Support"), PP. 9-10). In a recent opinion out of this District, Judge Perry set forth the standards the Court should employ in determining such a claim, as follows:

In cases where a contract gives one party discretion to determine issues arising under the contract, Missouri law requires that party to exercise its discretion in good faith, consistent with the covenant of good faith and fair dealing implied in every contract. *See, e.g., Missouri Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 48 (Mo. Ct. App. 2002); *see also, e.g., Farmers' Elec. Coop., Inc. v. Missouri Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. 1998) ("Missouri law implies a covenant of good faith and fair dealing in every contract."). "The covenant of good faith and fair dealing encompasses an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 370 (Mo. Ct. App. 2008) (internal citation and quotation marks omitted). The covenant does not create a general reasonableness requirement in contracts, however, and it is not enough "to show that a party invested with discretion made an erroneous decision." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007) (interpreting Missouri law); *see also, e.g., Schell v. Lifemark Hosps. Of Mo.*, 92 S.W.3d 222, 230-31 (Mo. Ct. App. 2002); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006) (applying Missouri law). Moreover, it is well settled that there is no breach of the covenant where the parties' agreement expressly permits the actions being challenged, and the party acted in accordance with the agreement. *See St. Joseph*, 251 S.W.3d at 371.

Instead, to establish a breach of the covenant of good faith and fair dealing, there must be evidence that the party with the discretion exercised its discretion in such a way so as to evade the spirit of the transaction or deny the other party the expected benefit of the contract. *See, e.g., BJC*, 478 F.3d at 914; *see also Cordry*, 445 F.3d at 1112 ("When a decision is left to the discretion of one party, the question is not whether the party made an erroneous decision but whether the decision was made in bad faith or was arbitrary or capricious so as to amount to an abuse of discretion.").

*CitiMortgage, Inc. v. OCM Bancorp, Inc.*, 2011 WL 1594950, at *3-4 (E.D. Mo. Apr. 27, 2011).

Upon consideration, the Court finds Platinum's allegations state a counterclaim for breach of the covenant of good faith and fair dealing, sufficient to survive the Citi Parties' Motion to Dismiss. As support for this ruling, the Court notes that rather than merely allege the Citi Parties made their repurchase requests in error, Platinum contends the requests were "arbitrary and abusive," as among other things they were based on claimed loan defects the Citi Parties knew were non-existent, and failed to afford Platinum the contractually-mandated period and opportunity to cure or correct the purportedly defective loans before demanding repurchase.

(Counterclaim, ¶ 63). These allegations support Platinum's position that the Citi Parties exercised their contractual discretion "so as to evade the spirit of the transaction or deny [Platinum] the expected benefit of the contract," *see OCM Bancorp*, 2011 WL 1594950, at *4, and so this portion of their Motion to Dismiss must be denied.

The Eighth Circuit's recent opinion in *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, 2015 WL 9268117 (8th Cir. Dec. 21, 2015), is not to the contrary, for two reasons. First, the Court agrees with Platinum it is significant that the case reached the Eighth Circuit in a different procedural posture, i.e., on appeal from the grant of a motion for summary judgment rather than, as here, on an early-filed motion to dismiss. Second, while the Court in *Chicago Bancorp* reaffirmed the proposition that "there can be no breach of the implied…covenant…where the contract expressly permits the action being challenged, and the defendant acts in accordance with the express terms of the contract," *see Chicago Bancorp*, 2015 WL 9268117, at *3 (quotation marks and citations omitted), it continued to hold as follows:

> And even if CMI erroneously exercised its "sole and exclusive discretion" under the contract, Bancorp has not provided evidence to establish that CMI acted in bad faith. It is not enough "to show that a party invested with discretion made an erroneous decision." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 914 (8th Cir. 2007) (interpreting Missouri law). Rather, Bancorp was required to provide evidence that CMI exercised its discretion in a way intended "to evade the spirit of the transaction or…to deny [Bancorp] the expected benefit of the contract." *Id.* (noting that it is insufficient to provide evidence that a discretionary determination "was flawed or unreasonable") (citation omitted); *see also Armour & Co. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993) (noting that "[c]onclusory affidavits do not provide a basis upon which to deny motions for summary judgment").
>
> Bancorp has presented no evidence that CMI exercised its discretion under the agreement in a manner intended to sabotage or evade the spirit of the agreement or to deny Bancorp the expected benefit of its bargain. *See BJC Health Sys.*, 478 F.3d at 914 (noting that the burden of proof is on the party asserting a bad-faith exercise of discretion). Accordingly, we conclude that the district court did not err in granting summary judgment on the….loans.

*Id.* at *4-5. In so holding, the Eighth Circuit confirmed that a party still may make a claim of breach of covenant of good faith and fair dealing when the contract at issue provides discretion, by asserting the alleged offender exercised its discretion in a manner intended to evade the spirit of the transaction, or to deny the other party the expected benefit of the contract. *Id.* at *4.[4]

### C. Fraudulent Concealment

The Citi Parties next assert Platinum's fraudulent concealment claim must be dismissed as untimely filed. (Citi Parties' Memo in Support, PP. 4-7). As support for this position, the Citi Parties note that Missouri law provides a five year statute of limitations for actions grounded in fraud. (*Id.* (citing Mo.Rev.Stat. § 516.120(5))). Because Platinum entered into the agreement at issue in February, 2004, over eleven years before it filed its claim for fraudulent concealment, the Citi Parties maintain the claim is barred by the applicable statute of limitations.

In response, Platinum notes that the five year period for "'[a]n action for relief on the ground of fraud' runs from accrual, and a fraud cause of action is 'deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.'" (Platinum's Memorandum in Opposition to Counter-Defendants' Motion to Dismiss, P. 6 (quoting Mo.Rev.Stat. § 516.120(5))). Platinum continues to assert its claim did not accrue until February, 2011, when it received the following email from CMI Repurchase Claims Analyst John Manocchio:

> I have consulted with our legal division and want to clarify section 2(i) of the Loan Purchase Agreement. It is common in the industry to require knowledge

---

4 The Court recognizes that pursuant to *Chicago Bancorp*, it is not to engage in a loan-by-loan analysis to decide whether CMI exercised its discretion in good faith. *Id.* at *4. Platinum thus must show that CMI acted generally in a manner so as to evade the spirit of the transaction, or to deny it the expected benefit of the contract, *Id.*, such as by demonstrating that CMI intended to unwind the entire agreement, or deny Platinum its expected profits thereunder. While Platinum may have "an uphill battle ahead of it" in attempting to prove such a claim, *see CitiMortgage, Inc. v. K. Hovnanian American Mortg.*, 2014 WL 1255943, at *4 (E.D. Mo. Mar. 26, 2014), the Court finds its allegations sufficient to survive the instant Motion to Dismiss. (*See, e.g.*, Counterclaim, ¶¶ 59, 62).

> qualifiers regarding borrower misrepresentation for certain reps and warrants to induce the funding and purchase of a loan yet remove the qualifiers when determining if repurchase is necessary. These reps and warrants are for the life of each loan and can be reviewed by CMI at any point in time. CMI specifically reserved the right to demand repurchase or indemnification, whether the loan was reviewed at the time of purchase or not. When these reps and warrants turn out to be fraudulent or materially inaccurate, CMI has the right under section 11 of the Loan Purchase Agreement to demand repurchase. It is CMI's position that the borrower's (*sic*) are obligated to make truthful statements in their origination package and the risk of a borrower lying during the origination process is contractually intended to shift back to the originator of the loan through the repurchase process. The borrower is still obligated to be truthful and provide accurate information regardless of what type of loan program the loan originated under. So in a nutshell, whether Platinum did or did not have knowledge, any misrepresentation discovered in the loan origination file is a repurchaseable event.

(Email Exchange, attached to Platinum's Counterclaim as Exh. A, P. 1). Platinum contends it was only upon receipt of this email that it discovered the fraudulently concealed material fact regarding the 2004 Correspondent Agreement, i.e., that the Citi Parties "*never intended to abide by the implied covenant of good faith and fair dealing*" with respect to said agreement. (Counterclaim, ¶ 51 (emphasis in original)).

Upon consideration, the Court finds the language of the February, 2011 email does not establish circumstances sufficient to toll the five-year statute of limitations set forth in § 516.120(5). A plain reading of the email exchange reveals Mr. Manocchio consulted with CMI's legal division in response to Platinum Vice President Lori Pelinski's contention that there exists an ambiguity in the Correspondent Agreement. (*See* Counterclaim, Exh. A, P. 2). Mr. Manocchio's response then catalogues the distinctions between sections 2 and 11 of the Correspondent Agreement, differences that are apparent from the language of the agreement itself, and offers a brief explanation of the motivation underlying the "common" industry practice of including the two provisions. The Court finds no support for Platinum's claim that the email provided evidence of the Citi Parties' fraudulent intent, i.e., evidence that at the time of contracting, they never intended to abide by the covenant of good faith and fair dealing. In the

absence of such evidence there is no basis for tolling, and so Platinum's claim for fraudulent concealment is barred by the five year statute of limitations.

### D. Citibank, N.A. And Citigroup, Inc. As Alter Egos

The Citi Parties finally assert that Citibank, N.A., and Citigroup, Inc., should be dismissed as Defendants, as Platinum provides no basis to pierce the corporate veil and treat them as alter egos of CMI. (Citi Parties' Memo in Support, PP. 13-15). As noted above, the Court has granted Platinum until **Monday, January 25, 2016**, within which to file an Amended Counterclaim. The Court therefore will deny this portion of the Citi Parties' Motion to Dismiss, without prejudice to their right to reassert the argument in relation to Platinum's Amended Counterclaim.[5]

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED that** the Citi Parties' Motion to Strike (ECF No. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Citi Parties' Motion to Dismiss Counterclaim (ECF No. 26) is **GRANTED** in part, **DENIED** in part, and **DENIED** without prejudice in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Platinum is granted until **Monday, January 25, 2016**, within which to file an Amended Counterclaim conforming to the holdings set forth in this opinion.

Dated this 13th Day of January, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

5 Platinum is cautioned to plead its allegations of alter ego liability solely with reference to matters at issue in this suit.