**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CITIMORTGAGE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15-cv-01242-MTS |
| | ) | |
| PLATINUM HOME MORTGAGE, CORP. | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Plaintiff CitiMortgage, Inc.'s ("CMI" or "CitiMortgage") Renewed Motion for Summary Judgment, Doc. [273], and Platinum Home Mortgage Corporation's ("Platinum") Motion for Partial Summary Judgment RE: Foreclosed Loans, Doc. [277]. These motions are fully briefed and ready for disposition. For the reasons discussed below, CMI's Renewed Motion for Summary Judgment will be granted, and Platinum's Motion for Partial Summary Judgment will be denied.

I.      <u>BACKGROUND</u>

A.      **The Parties' Agreement**

On February 13, 2004, Platinum entered into a Correspondent Agreement Form 200 ("the Agreement") with CMI. Doc. [120-3]. The Agreement provides, in part, that "[f]rom time to time, Correspondent [Platinum] may sell to CMI and CMI may purchase from Correspondent [Platinum] one or more residential mortgage, home equity, or other loans ('Loan(s)') in accordance with the terms, conditions, requirements, procedures, representations and warranties set forth in the 'CitiMortgage, Inc. Correspondent Manual' and all amendments, bulletins, program requirements and supplements to such Manual (collectively hereinafter referred to as

the 'CMI Manual'), and this Agreement." *Id.* The Agreement incorporates the CMI Manual by reference. *Id.*

Among the representations and warranties Platinum made to CMI under the Agreement are those set forth in Section 2(k), wherein Platinum represented and warranted:

> That each mortgage, home equity or other Loan (i) shall be fully enforceable and originated in accordance with the terms, conditions, representations, warranties and covenants contained in the CMI Manual and this Agreement which were in effect as of the Loan closing date, (ii), if applicable, was serviced in accordance with applicable Fannie Mae, Freddie Mac, FHA, VA, and/or HUD requirements and industry standards, and (iii) is subject to no defects or defenses, including but not limited to damage to the property securing the Loan, lien imperfections or environmental risk.

*Id*. § 2(k). Additionally, pursuant to Section 2(q) of the Agreement, Platinum represented and warranted that it would "fully comply with all additional representations, warranties and covenants contained in the CMI Manual." *Id.* § 2(q). Section 2202 of the CMI Manual contained several additional representations and warranties, including, but not limited to, representations that all information relating to the loan was complete and accurate and contained no fraud or misrepresentation; that each individual loan sold met CMI guidelines or investor requirements, with the understanding that CMI may sell each loan to a third party; that the loan complied with all agency guidelines, including Freddie Mac, Fannie Mae, VA, and FHA guidelines, in effect at the time the loan was sold to CMI; and that any appraisal submitted with each loan was completed in accordance with all state and federal laws, was submitted in support of the value of the property, and could be relied on by CMI. Doc. [120-8] § 2202.

The Agreement contained a cure-or-repurchase provision, which provided in relevant part as follows:

> If CMI, in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:

- 2 -

(i)       was underwritten and/or originated in violation of any term, condition, requirement or procedure contained in this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan;

(ii)      was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), Correspondent, Correspondent's directors, officers, employees, agents, independent contractors and/or affiliates, or any other party providing information relating to said Loan;

(iii)     was or is capable of being rescinded by the applicable borrower(s) pursuant to the provisions of any applicable federal (including but not limited to the Truth-in-Lending Act) or state law or regulation;

(iv)     must be repurchased from any secondary market investor (including but not limited to the Fannie Mae, Freddie Mac, FHA, VA, HUD or Government National Mortgage Association) due to a breach by Correspondent of any representation, warranty or covenant contained in this Agreement or the CMI Manual or a failure by Correspondent to comply in all material respects with the applicable CMI Manual terms, conditions, requirements and procedures; and/or

(v)      was subject to an Early Payment Default (as defined in the CMI Manual), an Early Payoff (as defined in the CMI Manual) or any other payment related defect (as defined in the CMI Manual)

Correspondent will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI.  If, after receiving such notice from CMI, Correspondent is unable to correct or cure such defect within the prescribed time, Correspondent shall, at CMI's sole discretion, either (i) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price") or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.  If CMI requests a repurchase of a defective Loan, Correspondent shall, within ten (10) business days of Correspondent's receipt of such repurchase request, pay to CMI the Repurchase Price by cashier's check or wire transfer of immediately available federal funds. If such defective Loan is owned by CMI at the time of repurchase by the Correspondent, CMI shall, upon receipt of the Repurchase Price, release to Correspondent the related mortgage file and shall execute and deliver such instruments of transfer or assignment, in each case without recourse or warranty, as shall be necessary to vest in Correspondent or its designee title to the repurchased Loan.

Doc. [120-8] § 11.

The "Repurchase Price" referenced in Section 11 is defined in the CMI Manual as follows:

**REPURCHASE PRICE**:  The Repurchase Price is defined as the sum of: (i) the current principal balance on the loan as of the paid-to date; (ii) the accrued interest calculated at the mortgage loan Note rate from the mortgage loan paid-to date up to and including the repurchase date; (iii) all unreimbursed advances (including but not limited to tax and insurance advances, delinquency and/or foreclosure expenses, etc.) incurred in connection with the servicing of the mortgage loan, (iv) any price paid in excess of par by CitiMortgage on the funding date, and (v) any other fees, costs or expenses charged by or paid to another investor in connection with the repurchase of the mortgage loan from such investor but only to the extent such fees, costs and expenses exceed the total of items (i) through (iv) above.

Doc. [120-8] § 2301.

The Agreement also contains two other provisions relevant to the instant motions.

Section 1 of the Agreement states in relevant part:

CMI may purchase Loans with or without conducting a complete review of the Loan documentation.  CMI's review of, or failure to review, all or any portion of the Loan documentation shall not affect CMI's rights to demand repurchase of a Loan or any other CMI right or remedy provided by this Agreement.

Doc. [120-3] § 1.

Section 14 of the Agreement states in relevant part:

The failure of either party to exercise any right given to it under this Agreement or to insist on strict compliance of any obligation under the Agreement shall not constitute a waiver of any right, including the right to insist on strict compliance in the future.

*Id.* § 14.

### B.    The Loans at Issue

Pursuant to the Agreement, Platinum sold at least 749 loans to CMI.  (Plaintiff CitiMortgage's Statement of Uncontroverted Material Facts in Support of Plaintiff's Motion for Summary Judgment on its Complaint, Doc. [119] ("PSUMF"), ¶ 24 and response thereto). Those sales included the seven residential mortgage loans at issue in this lawsuit (the "Loans"): the Delahuerta Loan, the Harris Loan, the Vitale Loan, the Smith Loan, the Mack Loan, the

- 4 -

Szczepaniak Loan, and the Raper Loan. *Id.* ¶ 26. Platinum underwrote or originated each of the Loans. *Id.* ¶ 28. The Loans were sold to CMI between April 25, 2006 and February 28, 2008. *Id.* ¶¶ 32–38. CMI subsequently sold the Loans to investors such as Fannie Mae and Freddie Mac. *Id.* ¶ 3. After purchasing the Loans from Platinum, CMI determined that each of the seven Loans contained one or more defects, including but not limited to one or more of the following: the loan application package misrepresented the borrower's income; the debt-to-income ratio for the loan exceeded applicable guidelines; the appraisal contained in the loan application package failed to comply with applicable guidelines and was unsupported; the loan-to-value ratio for the loan exceeded applicable guidelines; the required documentation verifying monthly payments was missing from the loan application; CMI was required to repurchase the loan from an investor, Freddie Mac or Fannie Mae; or the loan application package was missing necessary income documentation. *Id.* ¶¶ 39–70. For each loan, CMI sent a letter to Platinum providing notice of the loan defects (the "Initial Repurchase Letters"). *Id.* ¶ 72. In addition, in cases where CMI received a letter from an investor (such as Fannie Mae or Freddie Mac) identifying a potential defect in a loan, CMI sent a letter notifying Platinum of the investor's findings (the "Citing Notification Letters"). *Id.* ¶ 74. Platinum did not cure or correct the alleged defects to the full and complete satisfaction of CMI. *Id.* ¶ 76. CMI subsequently sent letters to Platinum with respect to each loan informing Platinum that repurchase was required, stating that repurchase must be confirmed on or before thirty days from the date of the letter, and stating that if Platinum failed to honor its contractual obligations by confirming repurchase of the loan within those thirty days, CMI would aggressively pursue its options due to Platinum's breach of the Agreement (the "Final Repurchase Letters"). Doc. [120-1] ¶¶ 50–51; Docs. [120-15], [121-3], [123-20], [122-19], [121-19], [123-4], [122-4].

For four of the seven Loans at issue (Mack, Raper, Smith, and Szczepaniak), CMI sent the Final Repurchase letters prior to the time the Loans were liquidated.  Doc. [290] ¶¶ 1, 3, 5, 7. For the three other Loans (Delahuerta, Harris, and Vitale), CMI sent the Final Repurchase Letters demanding repurchase to Platinum only after the Loans had been foreclosed on and the underlying property sold.  Doc. 288, ¶¶ 31, 38, 45.  To date, Platinum has not repurchased any of the Loans.  Doc. [119] ¶ 81.

On August 13, 2015, CMI filed its Complaint in the instant action.  CMI asserted breach of contract claims against Platinum with respect to each of the Loans.  For each Loan, CMI alleged that it made a determination of certain defects, that it demanded cure or repurchase of the Loan from Platinum, and that Platinum failed to cure the defects and failed to repurchase the Loan.  CMI seeks damages in the amount of $995,755.43, which it asserts represents the amount due to CMI.  Doc. [285] ¶¶ 2, 4, 6, 8, 24–27.

## II.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Legal Standard

The standards applicable to summary judgment motions are well settled, and they do not change when both parties have moved for summary judgment.  *See Tower Rock Stone Co. v. Quarry & Allied Workers Loc. No. 830*, 918 F. Supp. 2d 902, 905 (E.D. Mo. 2013) (citing *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983)).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013).  The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant does so, the nonmovant must respond by

submitting evidentiary materials that set out "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation marks omitted). "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager*, 716 F.2d at 1214.

  B.   **Discussion**

     1.   **CMI's Motion for Summary Judgment on the Mack, Raper, Smith, and Szcepaniak Loans**

Platinum concedes that CMI issued Final Repurchase Letters for the Mack, Raper, Smith, and Szczepaniak Loans prior to foreclosure or other Loan disposition and that CMI is entitled to summary judgment on these Loans. Doc. [289] at 1. But it "does not concede" the amounts CMI claims are due on each Loan. *Id.* Rather, in this case filed nearly six years ago where the amount in controversy is over one million dollars, it quibbles that its method of calculating the amounts rendered slightly different figures. On one Loan, Platinum concludes that the amount differs from CMI's calculation by $114.72 *in Platinum's favor* and on another Loan, it differs by a paltry $56.70 in favor of CMI. Because the Court finds there is no genuine dispute as to any material fact, it will grant summary judgment on these Loans in the amounts CMI has established.

In CMI's Statement of Uncontroverted Material Facts, Doc. [285], it states the amount due to it for each of the four Loans and supports the amount by citation to the record.  Its main support is an affidavit signed by Issac Miller, a Senior Repurchase Coordinator with CMI.  Doc. [275-2].  Miller's affidavit itself is supported by three exhibits.  *Id.*  CMI also points the Court to a previous affidavit by Miller that supports the amounts CMI puts forward, see Doc. [120-2], and for the Smith and Szczepaniak Loans, CMI also cited the record at Docs. [122-27] and [123-11], respectively.  The Court finds that, with this evidence, CMI established the amount Platinum owes it for the Loans, which means Platinum must point out contrary evidence in the record to create a genuine issue of material fact.  *See Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (noting on summary judgment motion that "after the moving party fulfills its duty" the nonmoving party must "proffer evidence that contradicts the moving party's showing and that proves the existence of a genuine issue of material fact.").  Platinum did not do so.

Platinum says CMI's calculation "lacks foundation and fails to support the alleged amount due."  Doc. [290] at 2, 5, 7, 9.  As previously described, however, CMI put forward affidavits with exhibits, and the Court finds they have a proper foundation and do support the amount CMI alleges is due.  Platinum takes issue with CMI's method for calculation because they are "more convoluted," Doc. [290] at 6, than Platinum's method, and it adds that its own method "is simpler and more accurate," Doc. [289] at 2, 3, 5.  That is, instead of proffering evidence stating what the amounts should be or citing somewhere in the record where Platinum has demonstrated or averred its price position, Platinum suggests its "simple[r]" approach based on the district court's denial of summary judgment on damages in *CitiMortgage, Inc. v. Equity Bank, N.A.*[1]  In that case, based on the evidence then before it, the court found that Miller's

---

[1] *CitiMortgage, Inc. v. Equity Bank, N.A.*, 261 F. Supp. 3d 942, 963–64 (E.D. Mo. 2017), *order clarified*, No. 4:15-cv-230-SPM, 2017 WL 7693367 (E.D. Mo. Dec. 1, 2017), *and aff'd*, 942 F.3d 861 (8th Cir. 2019).

calculation appeared to conflict with the language of the agreement at issue and even with his own deposition. *Id.* at 964. Platinum has pointed to no such evidence here.

Because Platinum did not point to any evidence in the record that contradicts CMI regarding the damages amount of the four Loans Platinum concedes it owes, there is no genuine issue of material fact on those four Loans.[2] *See CitiMortgage, Inc. v. Royal Pac. Funding Corp.*, No. 4:16-cv-00210-PLC, 2017 WL 3116135, at *12 (E.D. Mo. July 21, 2017) (denying CMI summary judgment on damages where defendant submitted declaration by its compliance and quality control manager averring what payments were "improperly included" and that "'payments were being made for mortgage insurance even after the mortgage insurance had been cancelled.'"). As such, the Court will grant CMI's Motion as to these four Loans and award a total on these four Loans of $640,172.14. *See* Doc. [285] ¶¶ 2, 4, 6, 8 (Mack, $142,820.22; Raper, $144,228.82; Smith, $219,950.43; and Szcepaniak, $133,172.67).

### 2. CMI's Motion for Summary Judgment on the Delahuerta, Harris, and Vitale Loans

After the Court of Appeals for the Eighth Circuit remanded this case for further proceedings consistent with its opinion,[3] this Court, on CMI's Motion, stayed the proceedings on remand pending the Eighth Circuit's decision in *CitiMortgage, Inc. v. Equity Bank, N.A.*, Case Nos. 18-1312 and 18-1313. Doc. [257]. The Eighth Circuit's opinion in *Equity Bank* made clear that, in this case, CitiMortgage would be entitled to damages on all loans that "still existed" and would be within its rights to demand that Platinum repurchase them. *See CitiMortgage, Inc. v.*

---

[2] Three times in its response to CMI's Statement of Uncontroverted Facts, regarding two of the Loans, Platinum cites a "Declaration of Lori Pelinski" but does not identify the location of this declaration in the record, and Platinum did not include it as an exhibit to its response. The Local Rules provide that parties disputing facts must provide evidence "set forth with specific citation(s) to the record[.]" E.D. Mo. L.R. 4.01(E). Altogether, the parties and the Court have filed nearly twelve-thousand pages of documents in this case. "Judges are not like pigs, hunting for truffles buried in [the record]." *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).
[3] *CitiMortgage, Inc. v. Platinum Home Mortg., Corp.*, 915 F.3d 501 (8th Cir. 2019).

- 9 -

*Equity Bank, N.A.*, 942 F.3d 861, 866 (8th Cir. 2019).  Since CitiMortgage sought repurchase

from Platinum, this Court subsequently instructed the parties that, in light of *Equity Bank*, the

only thing to determine is which Loans fall into which category of those that existed when CMI

sought repurchase and those that did not.  Doc. [270] at 3 n.1.  The parties dispute into which

category the Delahuerta, Vitale, and Harris Loans fall.  Docs. [289] at 1, [274] at 1.

In *Equity Bank*, the Eighth Circuit affirmed the district court's grant of summary

judgment to Equity Bank on loans that had gone through foreclosure.[4]  942 F.3d at 866–68.

Equity Bank, like Platinum here, refused to repurchase the foreclosed loans from CitiMortgage.

The district court concluded that "Equity did not have a contractual obligation to 'repurchase' the

Liquidated Loans, because at the time of the repurchase demand they had already been

foreclosed on, the property underlying them had been sold, and the loans no longer existed."

*CitiMortgage, Inc. v. Equity Bank, N.A.*, 261 F. Supp. 3d 942, 958–59 (E.D. Mo. 2017).  Though

the Eighth Circuit affirmed the judgment, it did not "endorse the district court's erroneous

conclusion that the loans did not 'exist.'"  *See Equity Bank*, 942 F.3d at 869 (Loken, J.,

dissenting).

Rather, the Eight Circuit concluded that "*sometimes* residential-mortgage loans cease to

exist after foreclosure."  *Id.* at 866 (emphasis added).  CitiMortgage, though, never "point[ed] to

evidence showing that these loans still existed," gave "evidence of what, if anything, remained of

the underlying loans," or "explained what, exactly, Equity was supposed to repurchase" after the

foreclosure.  *Id.* at 866.  This lack of evidence left the court "guessing about whether Equity

breached" its obligation to repurchase the loans when it failed to do so because CitiMortgage

---

[4] The panel in *Equity Bank* issued an opinion over a dissent from Judge Loken, who would have "reverse[d] the grant of summary judgment dismissing these six claims, leaving Equity free on remand to challenge CitiMortgage's application of the Repurchase Price formula in calculating its actual loses on the foreclosed loans." *Equity Bank*, 942 F.3d at 870 (Loken, J., dissenting).  The Court denied rehearing and rehearing en banc, but Chief Judge Smith and Judges Loken, Colloton, and Shepherd would have granted the petition for rehearing en banc.  Judges Gruender, Benton, and Kelly did not participate in the consideration or decision of the matter.  *Equity Bank*, 942 F.3d at 861, n.*, *reh'g and reh'g en banc denied*, (Jan. 17, 2020).

was only "within its rights to demand that Equity repurchase them" if they "still existed." *Id.*
Unlike in *Equity Bank*, where CitiMortgage failed to "point[] to evidence showing that the[]
loans still existed," *id.*, here, CitiMortgage has done just that on the three remaining Loans at
issue.  CitiMortgage has shown that the right to pursue a personal deficiency judgment against
the borrower "remained of the underlying loans" even after foreclosure.  *See id.*

The properties securing the Delahuerta, Harris, and Vitale Loans were all in Illinois.
Illinois law permits deficiency judgments against a borrower.  735 Ill. Comp. Stat. 5/15-1511
("Except as expressly prohibited by this Article, foreclosure of a mortgage does not affect a
mortgagee's rights, if any, to obtain a personal judgment against any person for a deficiency.");
*First Midwest Bank v. Cobo*, 124 N.E.3d 926, 934 (Ill. 2018) ("[L]enders may pursue a claim
under the mortgage and note either consecutively or concurrently.").  The Eighth Circuit in
*Equity Bank* indicated that the ability to secure a viable deficiency judgment meant that the loan
"existed."   *See Equity Bank*, 942 F.3d at 866 (providing Texas law with "short statute of
limitations for certain post-foreclosure deficiency judgments" as example of instance where
residential-mortgage loans "cease to exist" after foreclosure).

CitiMortgage submitted nine documents from the relevant legal proceedings on the
Delahuerta, Harris, and Vitale Loans, Docs. [275-3]–[275-11], and requested that the Court take
judicial notice of them, Doc. [276].  Platinum objected, not to their accuracy, relevance, or
reliability, but by arguing that the Court cannot take judicial notice of the factual contents or
judicial findings within the documents.  Doc. [290] at 14, 16, 18.  The Court will take judicial
notice of the existence of the documents and their judicial acts or operative legal facts.  Fed. R.
Evid. 201(b)(2); Adv. Comm. N. to Fed. R. Evid. 801(c); *Levy v. Ohl*, 477 F.3d 988, 991 (8th
Cir. 2007) (recognizing court's ability to take judicial notice of state court records that were
public documents); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("a court may

take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"); *Matter of Phillips*, 593 F.2d 356, 358 (8th Cir. 1979) ("No substantial issue concerning the propriety of judicial notice is raised in this Court in the absence of a dispute over the fact judicially noticed, here the contents of a state court pleading.").

Besides arguing against the taking of judicial notice relevant to the public records CMI submitted to the Court, Platinum has provided no argument or reasoning, in law or fact, disputing CMI's contention that after foreclosure the ability to secure a deficiency judgment against the borrowers remained on the Delahuerta, Harris, and Vitale loans.[5]  Docs. [289] at 10, [290] ¶¶ 13, 17, 21.  Instead, it repeated its argument that CMI cannot pursue claims on liquidated loans because "[f]oreclosure cuts off any rights to liquidated loans."  Doc. [289] at 10.  For this proposition, Platinum clings to language from the district court's opinion in *Equity Bank* and exclusively favorable snippets of the Eighth Circuit's affirmance while ignoring clear statements to the contrary.  The Eighth Circuit in *Equity Bank* makes clear that foreclosure does not necessarily extinguish or liquidate a loan.  *Equity Bank*, 942 F.3d at 866, 867 (noting "*sometimes* residential-mortgage loans cease to exist after foreclosure, such as by operation of state law" and noting that formula provision "might account for a situation in which a loan survived foreclosure and there was something left for Equity to buy.") (emphasis added); *see also id.* at 869 (Loken, J., dissenting) (noting "loans were not 'liquidated' by the mortgage foreclosure" as borrower was "still liable for the resulting deficiency" and noting court's decision did *not* "endorse the district court's erroneous conclusion that the loans did not 'exist'" after foreclosure).

---

[5] Platinum has not argued, for example, that the foreclosure or in rem deficiencies entered related to the Delahuerta, Harris, and Vitale Loans would have prevented it from securing a personal deficiency judgment, nor does it appear Platinum would have been precluded from securing such a judgment.  *See St. Ange v. Chambliss*, 390 N.E.2d 484, 487 (Ill. App. 1979).

The Eighth Circuit in the nearly identical *Equity Bank* case found that CitiMortgage would be within its rights to demand that Equity repurchase residential-mortgage loans that "still existed" when it sought repurchase. *Id.* at 866.  But the court faulted CitiMortgage for failing to provide "evidence of what, if anything, remained of the underlying loans." *Id.*  Without that evidence, the Eighth Circuit was left "guessing about whether Equity breached" the cure-or-repurchase provision. *Id.*  Thus, it did not establish it was entitled to repurchase of the loan, "the remedy it sought" and "sought all along." *Id.* at 866–67.

In this case, though, CitiMortgage has demonstrated "what, exactly, [Platinum] was supposed to repurchase" that it did not repurchase. *See id.* at 866.  Platinum, which has not argued otherwise, could have repurchased the preserved right to a deficiency judgment as allowed by Illinois law, which is what remained of the Loans at issue.  The Court is not "left guessing about whether [Platinum] breached by failing to fulfill its repurchase obligation." *See id.*  Platinum breached the Agreement.  Accordingly, CitiMortgage is entitled to judgment as a matter of law on the Delahuerta, Harris, and Vitale Loans.

CitiMortgage put forth in its Amended Statement of Uncontroverted Material Facts the balance it is due on the Delahuerta, Harris, and Vitale Loans, supported by citation to the record. Doc. [285] ¶¶ 24–27.  It cited the previously discussed affidavit of Issac Miller, Senior Repurchase Coordinator with CMI, Doc. [275-2], along with other exhibits for each, Docs. [120-22], [121-10], & [123-27].  Platinum "[d]isputed" those paragraphs, Doc. [290] ¶¶ 24–27, but it did not dispute the amounts.  Rather, it stated that it was "not obligated to repurchase the [Loans]." *Id.*  Platinum provided no argument or dispute of the amounts CitiMortgage provided; it only provided a general denial of liability.  The Local Rules plainly require a Response to a Statement of Material Fact to "set forth each relevant fact as to which the party contends a genuine issue exists" and to use "specific citation(s) to the record." E.D. Mo. L.R. 4.01(E).  "All

- 13 -

matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." *Id.*  Since Platinum did not specifically controvert the amounts CMI put forward, cite to the nearly twelve-thousand page record showing any calculations of what the actual amount its potential liability should be, or dispute the amounts other than a general denial of liability, the Court accepts CitiMortgage's numbers.  As such, the Court will grant CMI's Motion as to these three Loans and award a total on these three Loans of $355,583.29. Doc. [285] ¶¶ 24–27 (Delahuerta, $93,823.44; Harris, $157,638.75; and Vitale, $104,121.10).[6]

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Platinum's Motion for Partial Summary Judgment, Doc. [277], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff CMI's Renewed Motion for Summary Judgment, Doc. [273], is **GRANTED**.

**IT IS FINALLY ORDERED** that all remaining motions are **DENIED as moot**.

An appropriate Judgment will accompany this Memorandum and Order.

Dated this 19th day of February, 2021.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

---

[6] According to the record, which, as discussed, Platinum does not controvert, these amounts reflect credits to Platinum for sale proceeds from the sales of the properties after foreclosure.  Docs. [120-22], [121-10], & [123-27].  Thus, CMI is not receiving a windfall.  *See Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005) ("A party should be fully compensated for its loss, but not recover a windfall.").

- 14 -